IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>INFORMATION DOCK<br>ANALYTICS LLC,<br><br>           Debtor. | Chapter 11<br>Case No. 18-11849 |
| INFORMATION DOCK ANALYTICS<br>LLC, and<br><br>INFORMATION DOCK ANALYTICS<br>LLC PROTECTED SERIES SHORT, and<br><br>INFORMATION DOCK ANALYTICS<br>LLC PROTECTED SERIES MID, and<br><br>INFORMATION DOCK ANALYTICS<br>LLC PROTECTED SERIES LONG, and<br><br>INFORMATION DOCK ANALYTICS<br>LLC PROTECTED SERIES ISLAND,<br>and<br><br>INFORMATION DOCK ANALYTICS<br>LLC PROTECTED SERIES MULTI,<br><br>           Plaintiffs,<br><br>vs.<br><br>MICHAEL COUGHLIN and<br><br>M. KAY COUGHLIN, and | Adv. Proc. No. _____ |

CHRISTINE MCCARTHY and

AL LUCKETT, JR.,

              Defendants.

## COMPLAINT FOR DECLARATORY RELIEF

     Plaintiffs Information Dock Analytics LLC, a Delaware Series Limited Liability Company ("IDA"), Information Dock Analytics LLC Protected Series Short ("Protected Series Short"), Information Dock Analytics LLC Protected Series Mid ("Protected Series Mid"), Information Dock Analytics LLC Protected Series Long ("Protected Series Long"), Information Dock Analytics LLC Protected Series Island ("Island"), Information Dock Analytics LLC Protected Series Multi ("Protected Series Multi"), Information Dock Analytics LLC Protected Series Group Operations ("Protected Series Group Operations") (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby file this Complaint for Declaratory Relief against defendants Michael Coughlin ("Mr. Coughlin") and M. Kay Coughlin ("Ms. Coughlin") (collectively, the "Coughlin Defendants"), and defendants Christine McCarthy ("McCarthy"), Alfred Luckett, Jr. ("Al Luckett"), and Cultural Assets 1 LLC ("CA1," collectively, the "State Court Defendants," and with the Coughlin Defendants, "Defendants"), and in support hereof allege as follows:

<u>PARTIES</u>

1.     Plaintiff IDA is a series limited liability company organized under the laws of the State of Delaware.  IDA has its principal place of business at 7209 Lancaster Pike, Suite 4-1129, Hockessin, Delaware 19707.  IDA is owned by its 90 percent member, Jonathon Luckett ("Jonathon Luckett"), a resident of the State of Texas, and its 10 percent member, McCarthy.  Jonathon Luckett is the Manager of IDA.  Jonathon Luckett is the son of McCarthy and her husband, Al Luckett.

2.     Plaintiff Protected Series Short is a duly formed "series" under 6 *Del. C.* § 18-215 organized under the laws of the State of Delaware.  Pursuant to 6 *Del. C.* § 18-215(c), a "series" "may carry on any lawful business, purpose or activity, whether or not for profit" and can, among other things, "in its own name, contract, hold title to assets (including real, personal and intangible property), grant liens and security interests, and sue and be sued." Protected Series Short has its principal place of business at 7209 Lancaster Pike, Suite 4-1129, Hockessin, Delaware 19707, and is owned by its 90 percent member Jonathon Luckett and its 10 percent member McCarthy.  Jonathon Luckett is the Manager of Protected Series Short.

3.     Plaintiff Protected Series Mid is a duly formed series under 6 *Del. C.* § 18-215 organized under the laws of the State of Delaware.  Protected Series Mid has its principal place of business at 7209 Lancaster Pike, Suite 4-1129, Hockessin, Delaware 19707, and is owned by its 90 percent member Jonathon Luckett and its

3

10 percent member McCarthy.  Jonathon Luckett is the Manager of Protected Series Mid.

4.      Plaintiff Protected Series Long is a duly formed series under 6 *Del. C.* § 18-215 organized under the laws of the State of Delaware.  Protected Series Long has its principal place of business at 7209 Lancaster Pike, Suite 4-1129, Hockessin, Delaware 19707, and is owned by its 90 percent member Jonathon Luckett and its 10 percent member McCarthy. Jonathon Luckett is the Manager of Protected Series Long.

5.      Plaintiff Protected Series Island is a duly formed series under 6 *Del. C.* § 18-215 organized under the laws of the State of Delaware.  Protected Series Island has its principal place of business at 7209 Lancaster Pike, Suite 4-1129, Hockessin, Delaware 19707, and is owned by its 90 percent member Jonathon Luckett and its 10 percent member McCarthy.  Jonathon Luckett is the Manager of Protected Series Island.

6.      Plaintiff Protected Series Multi is a duly formed series under 6 *Del. C.* § 18-215 organized under the laws of the State of Delaware.  Protected Series Multi has its principal place of business at 7209 Lancaster Pike, Suite 4-1129, Hockessin, Delaware 19707, and is owned by its 90 percent member Jonathon Luckett and its 10 percent member McCarthy.  Jonathon Luckett is the Manager of Protected Series Multi.

7.     Protected Series Group Operations has its principal place of business at 7209 Lancaster Pike, Suite 4-1129, Hockessin, Delaware 19707, and is owned by its 90 percent member Jonathon Luckett and its 10 percent member McCarthy. Jonathon Luckett is the Manager of Protected Series Short.

8.     Defendant Mr. Coughlin is a resident of the State of New Mexico. Mr. Coughlin resides at 41 Violet Circle, Santa Fe, New Mexico 87506.

9.     Defendant Ms. Coughlin is a resident of the State of New Mexico. Ms. Coughlin resides at 41 Violet Circle, Santa Fe, New Mexico 87506.   On information and belief, Mr. Coughlin and Ms. Coughlin are husband and wife.

10.    Defendant McCarthy is a resident of the State of Maine.

11.    Defendant Al Luckett is a resident of the State of Maine. McCarthy and Al Luckett are husband and wife.

12.    Defendant CA1 is a limited liability company formed under the laws of the State of New Mexico.

<u>JURISDICTION AND VENUE</u>

13.    This Court has jurisdiction over this matter pursuant to 11 U.S.C. §§ 1334(a) and 157(b).

14.    This is a core proceeding pursuant to 11 U.S.C. § 157(b)(2)(A), (B), (E), (G), (K), and (O).

15.    Plaintiffs consent to the entry of final orders or judgments by this Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

16.    Venue of this adversary proceeding is proper pursuant to 11 U.S.C. § 1409(a).

## FACTS COMMON TO ALL COUNTS

**A.    The Entity Ownership of the Art and Artifacts.**

17.    Over the course of approximately 20+ years, various investor entities have amassed and maintained a culturally significant ethnographic collection of art and artifacts (collectively, the "Art and Artifacts").  Included in this collection are several African, Oceanic, Mesoamerican, and pre-contact Native American pieces purchased in the United States through various collectors at a significant cost to the investor entities. While the value of the collection could be substantial in the right market, given the complexities with the sale and transfer of the various Art and Artifacts (including the difficulty in establishing provenance for each of the items and various federal and international restrictions on trade), the collection is highly illiquid.

18.    With any collection of ancient art and artifacts, an owner faces substantial risk associated with repatriation claims, loss, theft, damage, and

significant market fluctuation in addition to significant costs associated with the storage, care, and insuring of such items.  To protect the collectors' investment as the various Art and Artifacts were being acquired, steps were taken to safeguard the collection and the collectors by acquiring and holding the Art and Artifacts through limited liability entities.  Specifically, the initial collection gathered by Al Luckett and his wife McCarthy was acquired by a New Mexico limited liability company known as Cultural Assets II, LLC ("CA2"), which was formed in June 1997; thereafter, the size of the collection was significantly expanded by CA2 through U.S.-based purchases.

19.    CA2 was owned 50/50 by Al Luckett and McCarthy, and appropriate steps were taken to have the purchase and transfer of the collection appropriately documented in tax filings with the Internal Revenue Service.  In November 2001, Al Luckett transferred his 50 percent ownership interest in CA2 to McCarthy, and in June 2004, McCarthy transferred a 1 percent ownership in CA2 to her son Jonathon Luckett. While Al Luckett continued to serve as an operations manager for certain of the investment entities, he surrendered his ownership stake in favor of his wife and son as of 2001.

20.    In December 2004, Deadend Investments Limited Partnership, a Nevada entity ("Deadend"), acquired 100 percent of the interest in CA2.  Deadend was initially owned by McCarthy (who owned 89.1 percent of the entity), Jonathon

Luckett (who owned 9.9 percent of the entity), and Brian Rowe (a longtime accountant for the Luckett family) ("Rowe") (who owned 1 percent of the entity). With this acquisition, all of the Art and Artifacts owned by CA2 were transferred to Deadend.

21.    To facilitate the eventual sale of the collection, steps were taken in November 2007 to create multiple new entities, each designated to hold various parts of the collection or facilitate the necessary marketing of the Art and Artifacts. Specifically, Part 1 ST LLC, Part 1 MT LLC, Part 1 LT LLC, HART LT LLC, and Multi Ethnic LT LLC (the "Collection LLCs") were formed under the laws of the State of Nevada, with Rowe controlling 21 percent of the interest in each of these entities, and McCarthy and Jonathon Luckett controlling 71.1 percent and 7.9 percent respectively.  Part 1 ST LLC was formed to hold short-term pre-Columbian investment items.  Part 1 MT LLC was formed to hold mid-term pre-Columbian investment items.  Part 1 LT LLC was formed to hold long-term pre-Columbian investment items.  HART LT LLC was formed to hold Hawaiian long-term pre-Columbian investment items.  Multi Ethnic LT LLC was formed to hold the remaining collection long-term investment items.  In addition, separate entities were formed to facilitate new market research, intellectual property services associated with the collection, and selling agent services.

22.     All transfers between the entities were done with the oversight of professionals, and documentation of these transfers were reflected in federal tax filings with the Internal Revenue Service and in various UCC filings associated with the businesses.

23.     In December 2012, the ownership interests in the Collections LLCs were reapportioned in accordance with McCarthy's estate planning (specifically to take advantage of changes in the tax laws expiring by December 31, 2012) and agreements between Rowe and Jonathon Luckett to transfer ownership.  As of December 31, 2012, the new owners of the Collection LLCs were Rowe holding 10 percent, McCarthy holding 10 percent, and Jonathon Luckett holding 80 percent.

24.     No non-insider creditor of the Debtor on the Petition Date (as defined below) was a creditor of the Debtor on December 31, 2012.

25.     In April 2014, the Collection LLCs moved their corporate domicile from Nevada to New Mexico, and Rowe surrendered his interest in the Collection LLCs, transferring 9 percent of his interests to Jonathon Luckett (who became the 89 percent owner) and 1 percent of his interests to McCarthy (who became the 11 percent owner).

26.     On October 13, 2017, Jonathon Luckett formed Plaintiffs (*i.e.,* IDA and its accompanying Series) under the laws of the State of Delaware.  The

Collection LLCs were merged into the various Series as follows:  Part 1 ST LLC was merged into Protected Series Short; Part 1 MT was merged into Protected Series Mid; Part 1 LT LLC was merged into Protected Series Long; HART LT LLC was merged into Protected Series Island; and Multi Ethnic LT LLC was merged into Protected Series Multi. As a result of these mergers, all Art and Artifacts held by the Collection LLCs are the property of Plaintiffs.

**B.  The Final Judgment Against Cultural Assets 1 LLC, Al Luckett, and McCarthy.**

27.    Beginning in August 2010, Plaintiffs' collection of Art and Artifacts was housed in certain real property located at 21 Painted Horse Road, in Santa Fe County, New Mexico (the "Leased Premises").

28.    The Leased Premises was leased by the Coughlin Defendants to Cultural Assets 1 LLC ("CA1"), a New Mexico limited liability company that was 99 percent owned by Deadend, and Al Luckett and McCarthy.

29.    None of the Plaintiffs were a party to the lease, either in their own names or in the names of any of their predecessors.

30.    In addition to operating CA1 on the Property, Al Luckett and McCarthy both lived on the Property as their principal residence.

31.    Al Luckett served as the operations manager for CA1—which was working to establish the provenance of the various Art and Artifacts, as well as artwork of third parties.

32.    In September 2012, CA1 and Al Luckett got into a dispute with their landlords, the Coughlin Defendants, concerning the rental of the Property: specifically, Al Luckett maintained that he was given a handshake deal that CA1 could continue to rent the Property for an additional year, but that the Coughlin Defendants abruptly changed their mind and demanded that CA1, Al Luckett, and McCarthy vacate the house within 3 days. With nowhere to go and no means to move the entire collection out in the timeframe demanded, Al Luckett and his wife McCarthy refused.

33.    On October 1, 2012, the Coughlin Defendants filed suit in the First Judicial District Court in the State of New Mexico, County of Santa Fe (the "New Mexico State Court") against the State Court Defendants in a case captioned *Michael Coughlin and M. Kay Coughlin v. Cultural Assets 1, LLC, Al Luckett, and Christine McCarthy*, D-101-CV-201202707 (the "State Court Action").

34.    As the case moved forward in the state court, the Coughlin Defendants claimed that they had lost a sale opportunity related to the Property, allegedly resulting in significant damage.   While the State Court Defendants maintained that the sale opportunity was bogus, a default judgment was entered against the State Court Defendants on December 18, 2015, on the Coughlin Defendants' claims.

35.     Following a damages hearing in 2016, the New Mexico State Court issued its Findings of Fact, Conclusions of Law and Final Judgment on May 9, 2016 (the "Final Judgment") (a copy of which is attached hereto as **Exhibit A**), determining:  (a) that the State Court Defendants owed the Coughlin Defendants $32,209.68 in unpaid rent; (b) that the actions of the State Court Defendants had resulted in a lost sale of the real property, damaging the Coughlin Defendants in the amount of $217,500.00; and (c) that the Coughlin Defendants incurred an additional $112,924.70 in carrying costs associated with the real property.  The total compensatory damages added up to $362,634.38.

36.     In addition, the New Mexico State Court determined that the State Court Defendants were liable to the Coughlin Defendants for attorneys' fees and costs in the amount of $117,608.52 and punitive damages of $150,000.00.  The grand total for the Final Judgment against the State Court Defendants was a staggering $630,242.90 (the "State Court Judgment"). In no way could the State Court Defendants have envisioned at the outset of the case against them that there would be a $630,000 judgment related to a landlord-tenant dispute simply regarding additional time to vacate the property.

## C.     The Coughlin Defendants' Collection Efforts.

37.     Following the entry of the Final Judgment, the Coughlin Defendants initiated collection proceedings.

38.    Among their attempts to enforce the judgment, the Coughlin Defendants sought to execute on the Art and Artifacts.

39.    At the time, the Arts and Artifacts were still owned by the Collection LLCs.

40.    The State Court Defendants had previously taken the position in prior filings with the New Mexico State Court that the Art and Artifacts were not owned by the State Court Defendants (Al Luckett, McCarthy, and CA1), but the Coughlin Defendants nevertheless filed applications for writs seeking to execute on these assets.

41.    On September 23, 2016, the Coughlin Defendants filed an Application for a Writ of Execution in the New Mexico State Court seeking to execute on "personal property" in storage at a Santa Fe storage facility (the "Storage Facility"), which was where the Arts and Artifacts were stored.

42.    Even though these assets were actually the property of the Collection LLCs (and later, the property of Plaintiffs), and without any evidence indicating that they belonged to the State Court Defendants, the Coughlin Defendants filed an application to enjoin the transfer of those assets.

43.    On November 17, 2016, the New Mexico State Court issued an Order for Preliminary Injunction (a copy of which is attached hereto as **Exhibit B**), which purported to freeze "*Defendants'* inventory of personal and business

property under Defendants' control, directly or indirectly through a third party."
(emphasis added).

44.     Despite obtaining an Amended Writ of Execution on the same day,
the Sheriff did not serve that writ, and it expired.

45.     The Coughlin Defendants then filed a Renewed Application for Writ
of Execution on August 1, 2017, seeking substantially the same relief as the
original application.

46.     Concerned that their property would be wrongfully seized and sold,
the Collection LLCs moved the Art and Artifacts to a new location.

47.     At the time, Jonathon Luckett—a stranger to that proceeding— owned
89 percent of the equity in each of the Collection LLCs and was the sole manager.

48.     Following a September 20, 2017, hearing, the New Mexico State
Court issued another Writ of Execution (the "Writ of Execution," attached hereto
as **Exhibit C**), which again applied to "property in the control of Cultural
Assets I, LLC, Al Luckett, or Christine McCarthy …" again but made no reference
to Plaintiffs herein or their property.

49.     By the time of entry of the Writ of Execution, however, the assets had
already been moved outside of the State of New Mexico and placed in storage
elsewhere.

50.    With the Plaintiffs' property no longer in the Storage Facility, on September 22, 2017, the Coughlin Defendants filed an Emergency Motion for Criminal Contempt, claiming that the State Court Defendants had moved the collection in violation of the Preliminary Injunction entered by the New Mexico State Court.

51.    On October 17, 2017, the New Mexico State Court issued an Order of Contempt (the "Contempt Order," a copy of which is attached hereto as **Exhibit D**) against the State Court Defendants requiring them to return the property removed from the Storage Facility.

52.    At no time have the Coughlin Defendants initiated a proceeding against Plaintiffs for a determination of ownership in connection with the Art and Artifacts.

53.    With the property in the Storage Facility not belonging to the State Court Defendants, and no judicial process having taken place to establish the rightful ownership of the assets claimed to be subject to the Order of Contempt, the State Court Defendants faced a threat of being unable to purge the finding of contempt.

**D.      Al Luckett and McCarthy Move to Maine.**

54.      By October 2017, the Arts and Artifacts having been removed and the operations of CA1 having been terminated due to the eviction, Al Luckett and McCarthy were both destitute and needed family support to make ends meet.

55.      As a result, both left New Mexico and moved to Maine to be close to family and to find work.

56.      After establishing a domicile in Maine, Al Luckett and McCarthy were arrested on April 4, 2018, on the Order of Contempt and held in a jail in the State of Maine pending extradition.

57.      After hearing Al Luckett and McCarthy's story, the Maine judge granted bail in the amount of $1,000, and ordered Al Luckett and McCarthy to return on their own recognizance to New Mexico in 30 days to face a hearing on the contempt.

58.      Al Luckett and McCarthy traveled back to New Mexico at their own expense to attend hearings scheduled for May 8, 2018 and May 10, 2018 to purge themselves of contempt.

59.      The judge that had entered the Order of Contempt had them immediately arrested and held until they returned the Debtor's Art and Artifacts.

60.    At a subsequent hearing, the New Mexico State Court did not give any weight to the State Court Defendants' assertion that the assets were owned by a third party that was not a party to (much less a judgment debtor in) that case.

61.    The State Court Defendants have been incarcerated by order of the New Mexico State Court continuously since May 10, 2018.

**E.    The Plaintiffs Own the Collection.**

62.    While Al Luckett and McCarthy have been ordered to hand over the Art and Artifacts that were located in the Storage Facility or face imprisonment, the property in question does not belong to either of them.

63.    All of those assets belong to Plaintiffs.

64.    Al Luckett is not a member or manager of Plaintiffs and has no right to any of the property owned by Plaintiffs.

65.    While McCarthy is a 10 percent member of Plaintiffs, she is not a manager and likewise does not have any rights to the property owned by the Plaintiffs other than what is provided for under the Delaware Limited Liability Company Act (6 *Del. C.* § 18-101, *et seq.*).

66.    The Coughlin Defendants are judgment creditors of Al Luckett and McCarthy, but they have no right to execute on the assets of the Debtor in satisfaction of their debt. *See* 6 *Del. C.* § 18-703(e) ("No creditor of a member or

of a member's assignee shall have any right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited liability company").

67.    The only right that a creditor has with respect to a member of a Delaware limited liability company is entry of a charging order. 6 *Del. C.* § 18-703(d).

68.    Similarly, judgment creditors of a member have no right to execute on the assets of a protected series of the Debtor in satisfaction of the member's debts. 6 *Del. C.* § 18-215(b) ("none of the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to the limited liability company generally or any other series thereof shall be enforceable against the assets of such series").

69.    The New Mexico State Court has expressly conditioned the release of the State Court Defendants upon transferring possession and control of the Art and Artifacts—which are property of the estate—to the Sheriff of Santa Fe County, presumably to make them available for satisfaction of Defendants' judgment against the State Court Defendants.

70.    On August 10, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Since the Petition

Date, the Debtor has managed its affairs and remained in possession of its assets as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

71.    On the Petition Date, the Debtor made demand on Defendants' counsel to petition the court in Santa Fe for the immediate release of the State Court Defendants because requiring them to produce assets that were property of the Debtor's estate would violate the automatic stay.

72.    The Coughlin Defendants did not agree to petition the court in Santa Fe, and every day that passes while the State Court Defendants remain incarcerated deprives them of their liberty in violation of the automatic stay and their constitutional rights to due process.

73.    The Coughlin Defendants are aware of the pendency of the above-captioned Chapter 11 proceeding and their violation of the automatic stay is willful.

74.    At the time they sought contempt in the New Mexico State Court, the Coughlin Defendants were aware that the Art and Artifacts did not belong to the State Court Defendants.

75.    Upon information and belief, the Coughlin Defendants' intention in seeking contempt against the State Court Defendants was to pressure the Debtor, whose manager is the State Court Defendants' son, into using property of the

Debtor to obtain their freedom even though neither the Debtor nor Jonathon Luckett are liable for the Defendants' debt.

76.    Permitting the State Court Defendants to remain incarcerated because of their inability to transfer possession of property of the estate to the Coughlin Defendants is an improper attempt by the Coughlin Defendants to enforce their prepetition judgment.

77.    Permitting the State Court Defendants to remain incarcerated because of their inability to transfer possession of property of the estate to the Coughlin Defendants is egregious and malicious.

## COUNT ONE
*(Declaratory Relief Regarding Property Interests – 28 U.S.C. § 2201)*

78.    Plaintiffs incorporates all preceding paragraphs into this count as if fully re-alleged herein.

79.    The Coughlin Defendants are seeking to enforce their State Court Judgment against third parties by executing on the Art and Artifacts.

80.    The Coughlin Defendants' right to execute on the Art and Artifacts exists only to the extent that the State Court Defendants own an interest in those assets upon which a judgment creditor could execute.

81.    The State Court Defendants do not own any interest in the Art and Artifacts, however, as all right, title, and interest in and to each of those assets are owned by one of the Plaintiffs.

82.    There is no property interest of the State Court Defendants in the Arts and Artifacts in which the Coughlin Defendants may execute in satisfaction of their judgment.

83.    If the Coughlin Defendants are successful in executing on any of the Art and Artifacts, Plaintiffs would be irreparably injured.

84.    There is a case of actual controversy involving ownership of the Art and Artifacts.

COUNT TWO
*(Enforcement of the Automatic Stay – 11 U.S.C. § 362)*

85.    Concurrently herewith, the Debtor has filed a Motion To Enforce Automatic Stay in its above-referenced bankruptcy case (the "Motion To Enforce").

86.    The Debtor believes that the Motion To Enforce is procedurally proper as a contested matter in that case and that no separate adversary proceeding is necessary.

87.    To the extent, however, that the Court determines that an adversary proceeding is necessary for any of the relief set forth therein, the relief requested in the Motion To Enforce is incorporated into this count by reference as if fully set forth herein.

WHEREFORE, Plaintiffs request that this Honorable Court enter an order of judgment:

(I)    Declaring:

(a)    that Plaintiffs own all right, title, and interest in and to the Art and Artifacts, as well as that the State Court Defendants do not own any interest in and to the Art and Artifacts;

(b)    that the State Court Defendants do not own any interest in and to the Art and Artifacts; and

(c)    that there is no interest of the State Court Defendants in the Arts and Artifacts upon which Defendants may execute in satisfaction of their State Court Judgment; and

(II)    Declaring:

(a)    that the continuing incarceration of Al Luckett for failure to deliver custody, possession, or control of property of the Debtor's estate into the custody of a non-bankruptcy court for satisfaction of a prepetition judgment is a violation of the automatic stay codified at 11 U.S.C. § 362(a);

(b)    that having petitioned for such incarceration before the Petition Date, the failure or refusal to seek Al Luckett's immediate release is a willful violation by the Coughlin Defendants of the automatic stay codified at 11 U.S.C. § 362(a);

(c)    that the continuing incarceration of McCarthy for failure to deliver custody, possession, or control of property of the Debtor's estate into the custody of a non-bankruptcy court for satisfaction of a prepetition judgment is a violation of the automatic stay codified at 11 U.S.C. § 362(a); and

(d)    that having petitioned for such incarceration before the Petition Date, the failure to seek McCarthy's immediate release is a willful violation by the Coughlin Defendants of the automatic stay codified at 11 U.S.C. § 362(a);

(III)    Determining that the Debtor, Jonathon Luckett, Al Luckett, and McCarthy are individuals injured by the Coughlin Defendants' above-described willful violations of the automatic stay, and awarding them actual damages (including but not limited to damages arising from emotional distress) and

attorneys' fees on account of such violations, and punitive damages in the amount of three times the other amounts awarded; and

(IV)   Granting Plaintiffs such further relief as this Court deems just and proper.

Dated:  August 10, 2018          Respectfully submitted,
        Wilmington, Delaware
                                 HILLER LAW, LLC


                                 **/s/ Adam Hiller**
                                 Adam Hiller (DE No. 4105)
                                 1500 North French Street, 2nd Floor
                                 Wilmington, Delaware 19801
                                 (302) 442-7677 telephone
                                 ahiller@adamhillerlaw.com

                                 *Attorney for Plaintiffs*